UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FLOR T. RAMIREZ,

      Plaintiff,

v.                                    Case No. 6:19-cv-2391-Orl-NPM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Flor T. Ramirez seeks judicial review of a denial of her applications for disability insurance benefits and supplemental security income. The Commissioner filed the transcript[1] of the proceedings, the parties filed a Joint Memorandum (Doc. 23), and with leave of Court, Ramirez filed a Reply (Doc. 27). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Disability Benefits and the ALJ's Decision

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

---

[1] Cited as "Tr." followed by the appropriate page number.

expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.[2]  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[3]

## B.    Procedural history and factual background

Ramirez was born in January 1977, and completed at least a ninth grade education, although she may have obtained a GED. (Tr. 41). Ramirez last worked as a customer service representative, telephone solicitor, and collection clerk. (Tr. 45).

On August 3, 2017, Ramirez applied for disability benefits ("DIB") and supplemental security income ("SSI"), claiming she was unable to work due to disabling conditions beginning July 21, 2015. Ramirez's applications were administratively denied initially on January 10, 2018, and upon reconsideration on June 21, 2018. (Tr. 166, 167, 216, 217, 381-391).

At Ramirez's request, Administrative Law Judge Emily Ruth Statum ("ALJ") held a hearing on April 30, 2019, concerning the denial of disability benefits. (Tr. 60-102). The ALJ issued a decision on July 2, 2019, finding Ramirez not disabled from July 21, 2015, through the date of the decision. (Tr. 21-48).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

On October 16, 2019, the agency's Appeals Council denied Ramirez's request for review. (Tr. 1-5). Ramirez then filed a Complaint (Doc. 1) with this Court on December 19, 2019, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 16).

## C.     The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are

inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Ramirez last met the insured status requirements through December 31, 2015. At step one of the evaluation, the ALJ found Ramirez had not engaged in substantial gainful activity since July 15, 2015, the amended alleged onset date. (Tr. 24). Ramirez applied for both DIB and SSI benefits. For DIB, Ramirez must prove she was disabled before her date last insured. *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014). SSI benefits do not have this limitation. As a result, the ALJ separated her findings for each type of application and the Court will follow suit.

At step two, with respect to DIB, the ALJ characterized Ramirez's severe impairments as: "Meniere's disease, disequilibrium, sensorineural hearing loss bilaterally, tinnitus, minor multilevel lumbar degenerative disc disease with annular fissures, gastritis, history of blackout episodes with no confusion, history of asthma, mild degenerative disc disease of the cervical spine." (Tr. 24). As to SSI, the ALJ characterized Ramirez's severe impairments as: "chronic sinusitis, diabetes mellitus, hyperlipidemia, degenerative disc disease of the lumbar spine, mild cervical disc disease with associated cervicalgia, mild intermittent asthma, peripheral venous insufficiency, varicose veins of lower extremity status-post ablation, headache, sensorineural hearing loss left, Meniere's disease, major depressive disorder, posttraumatic stress disorder (PTSD), generalized anxiety disorder and bipolar disorder." (Tr. 26).

5

At step three, the ALJ determined Ramirez did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 26).

As a predicate to step four for DIB, the ALJ arrived at the following RFC:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except with standing and or walking 4 hours in an 8 hour workday, sitting about 6 hours in an 8 hour workday, with occasional climbing ramps or stairs, no climbing of ladders, ropes or scaffolds, occasional balancing, occasionally stooping, kneeling, crouching, or crawling, with decreased hearing with the left ear working in an environment with no loud noises but with an ability for hearing conversation in a business or office setting, avoiding even moderate exposure to fumes, odors, dusts, gases or poor ventilation and no exposure to hazards such as machinery or heights.

(Tr. 28-29).

For SSI, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except with standing and or walking 4 hours in an 8 hour workday, sitting about 6 hours in an 8 hour workday, with occasional climbing ramps or stairs, no climbing of ladders, ropes or scaffolds, occasional balancing, occasionally stooping, kneeling, crouching, or crawling, with decreased hearing with the left ear working in an environment with no loud noises but with an ability for hearing conversation in a business or office setting, avoiding even moderate exposure to fumes, odors, dusts, gases or poor ventilation and no exposure to hazards such as machinery or heights. She has the ability for understanding and remembering simple instructions, and completing simple tasks and work procedures with frequent but not constant contact with coworkers and general public.

(Tr. 33).

Consequently for DIB, the ALJ found Ramirez capable of performing her past relevant work as a customer service representative, telephone solicitor, and collection clerk as generally performed during the relevant period of July 21, 2015 through December 31, 2015. The ALJ determined that this work does not require the performance of work-related activities precluded by Ramirez's RFC. (Tr. 45). In the alternative, the ALJ made step-five findings. In support, the vocational expert identified two representative occupations an individual with Ramirez's age (38 years old on the alleged disability onset date), education (limited), work history, and RFC could perform:

(1)     Ticket Seller, DOT 211.467-030, light as defined by the DOT but performed at a sedentary level with a sit/stand option, unskilled, SVP 2; and

(2)     Call Out Operator, DOT 237.367-014, sedentary, unskilled, SVP 2.

(Tr. 45-46).

With respect to SSI, the ALJ determined Ramirez was not capable of performing her past relevant work, finding the job demands exceeded Ramirez's RFC. (Tr. 46). At step five, the ALJ found Ramirez could perform other jobs that existed in significant numbers in the national economy. In support, the vocational expert identified the same two representative occupations an individual with Ramirez's age (40 years old on the application date), education (limited), work experience, and RFC could perform:

(1)    Ticket Seller, DOT 211.467-030, light as defined by the DOT but performed at a sedentary level with a sit/stand option, unskilled, SVP 2; and

(2)    Call Out Operator, DOT 237.367-014, sedentary, unskilled, SVP 2.

(Tr. 46-47). The ALJ found Ramirez not disabled from July 21, 2015, through the date of the decision. (Tr. 46-48).

## II.    Analysis

Ramirez's appeal presents the following issues:

(1)    Whether the ALJ erred by failing to find additional severe impairments.

(2)    Whether the ALJ erred by finding Ramirez's impairments did not meet or medically equal a listed impairment.

(3)    Whether the ALJ erred when considering the physicians' opinions.

(4)    Whether the ALJ erred in her assessment of the subjective evidence.

(5)    Whether the ALJ properly considered the combined effects of Ramirez's impairments on her RFC.

(6)    Whether the vocational expert's testimony constituted substantial evidence.

(Doc. 23, pp. 27-51; 51-56).

### A.    Standard of review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir.

8

2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

Before addressing each specific issue, the Court addresses the Commissioner's general contention that Ramirez waived her arguments. (Doc. 23, p. 37). First, the Commissioner contends Ramirez failed to cite to the administrative record for factual support for many of her arguments. (*Id.*). And second, the Commissioner argues many of Ramirez's arguments are conclusory in nature and lack citation to legal authority. (*Id.*).[4]

---

[4] The Commissioner also argues Ramirez's conclusory arguments invite the Court to improperly

The Scheduling Order requires Ramirez to: "concisely set forth his or her contentions supported by legal authority and by reference to facts in the Statement of Facts, including citations to the page(s) of the administrative record where cited evidence is found, and complete citations to relevant legal authority." (Doc. 15, pp. 4-5). By failing to cite to the record and failing to cite to legal authority in many instances, Ramirez has failed to comply with the Scheduling Order (Doc. 15) and failed to meet her burden of developing her arguments to show the ALJ's decision lacked substantial evidence. *Williams v. Saul*, No. 5:18-CV-158-MJF, 2019 WL 4280055, *21 (N.D. Fla. Sept. 9, 2019). It is well settled in the Eleventh Circuit, "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *see, e.g.*, *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived an issue because he did not elaborate on claim or provide citation to authority regarding claim).

Ramirez did correct some—but by no means all—of these issues in her Reply (Doc. 27). The Court will therefore address only those arguments with citation to the

---

reweigh the evidence, citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005). (Tr. 37-38). The Court will address this issue during its discussion.

administrative record and citation to legal authority. The Court deems the remaining arguments waived.

**B.     Whether the ALJ erred by failing to find additional severe impairments**

Ramirez briefly asserts the ALJ failed to mention pelvic or abdominal impairments, PTSD, rape trauma, shoulder limitations, venous impairments, medication side effects, or persistent vomiting as severe impairments. (*Id.* , pp. 51-52). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 950 (11th Cir. 2014) (quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). While the standard for severity is low, the severity of an impairment "'must be measured in terms of its effect upon ability to work.'" *D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 945 (11th Cir. 2010) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

"Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec*., 382 F. App'x 823, 825 (11th Cir. 2010). Instead, the ALJ is only required to consider a claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the

11

claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted). In other words, as long as the ALJ considered Ramirez's severe impairments in combination with Ramirez's non-severe impairments any potential error at step two is harmless. *See Griffin*, 560 F. App'x at 841-42.

Here, for both DIB and SSI, the ALJ determined Ramirez had severe impairments and continued to step three. (Tr. 24, 26). As the Court discusses at length in the following sections, the ALJ thoroughly considered the medical records and all of Ramirez's impairments, whether severe or non-severe, for the relevant time periods for both DIB and SSI. (Tr. 24-45). The Court finds no error at step two.

### C.    Whether the ALJ erred by finding Ramirez's impairments did not meet or medically equal a listed impairment

Ramirez contends the ALJ erred in analyzing whether Ramirez's mental impairments met or equaled Listings 12.04 and 12.06.[5] (Doc. 23, pp. 34-36).

---

[5] Ramirez also asserts: "Based on the foregoing, the ALJ failed to apply the correct legal standards in evaluating the medical and testimonial evidence of record, failed to determine the credibility, or lack thereof, of Ramirez and his [sic] witness, and in that decision perpetrated an error of analysis that should have determined Ramirez met the requirements of listed impairment 1.02." (Doc. 23, p. 36). Ramirez provided no supporting argument or citation to authority as to Listing 1.02. The Court therefore finds Ramirez waived this argument. *See Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019).

Ramirez claims the ALJ failed to consider all of Ramirez's mental impairments and associated evidence, but Ramirez mostly fails to cite to the administrative record or legal authority in support of this argument. (*Id.*, p. 34). Simply put, Ramirez broadly argues the ALJ erred in discounting much of the record and testimonial evidence. (*Id.*).

A claimant has the burden of proving an impairment meets or medically equals a listed impairment. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 741 (11th Cir. 2008). To meet a listing, a claimant must have a diagnosis included in a listing and provide medical reports documenting that the conditions meet the specific criteria of a listing and the duration requirement. *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). Listing 12.04 provides a claimant "is disabled if she has a sufficiently severe 'disturbance of mood, accompanied by a full or partial manic or depressive syndrome.'" *Id.* (citing 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.04). Listing 12.06 provides a claimant "is disabled if she suffers from anxiety and that 'anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.'" *Id.* (citing 20 C.F.R. § 404, Subpt. P, App. 1, Listing 12.06).

In order to meet these listings, a claimant must meet the criteria of either paragraphs A and B or paragraphs A and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Paragraph A lists the medical symptoms that must be present in the medical evidence, and paragraph B requires extreme limitation of one, or marked limitation of two of the functional areas listed in the decision. *Id.* Paragraph C requires a claimant to have a medically documented history of the existence of a disorder for over two years. *Id.*

For DIB, while the ALJ noted that Ramirez had an assessment of anxiety, the ALJ pointed to treatment notes documenting unremarkable or normal psychiatric examinations during the relevant time period. The ALJ also cited to Ramirez's anxiety being treated conservatively with prescribed medication without dose change and no reports of panic attacks at office visits. Finally, the ALJ noted that Ramirez sought treatment for anxiety from Urgent Care physicians and not from mental health providers. In the four functional areas, the ALJ found Ramirez to have no limitations. In support, the ALJ cited to examinations on April 29 and August 14, 2015, which revealed Ramirez had normal mood and affect with intact judgment, memory, and insight. The ALJ concluded that "there is no medical evidence of record of any work related limitations because of anxiety." (Tr. 25-26). In further support, the ALJ cited to the State Agency medical consultants who found Ramirez

did not meet or equal the listings for purposes of DIB. (Tr. 26, 108, 120). The Court finds substantial evidence supports the ALJ's findings.

For SSI, the ALJ found Ramirez to have moderate limitations in: (1) understanding, remembering or applying information; (2) interacting with others; and (3) concentrating, persisting or maintaining pace. And the ALJ found Ramirez to have mild limitations in adapting or managing oneself. While the ALJ considered both Ramirez's and her mother's testimony regarding Ramirez's need for assistance, the ALJ contrasted that testimony with Ramirez being able to use a computer or smartphone, living with her daughter (which demonstrates some interaction with others), doing some chores, and going out alone to shop, at least to some degree. (Tr. 27-28). The ALJ also relied on the opinions of Theodore Weber, Psy.D. and James Brown, Ph.D. that Ramirez is able to understand and remember simple instructions, complete simple tasks or work procedures, could cooperate and be socially appropriate, and would be able to react or adapt appropriately to the work environment. (Tr. 27-28, 162). Furthermore, as the ALJ noted, Drs. Weber and Brown determined Ramirez's impairments do not meet or equal a listed impairment. (Tr. 26, 154-155, 203-204). The ALJ comprehensively and sufficiently analyzed whether Ramirez's impairments met or medically equaled Listings 12.04 and 12.06. (Tr. 25-28). The ALJ specifically found: "The severity of the claimant's mental

impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04 and 12.06." (Tr. 27).

At bottom, the ALJ considered Listings 12.04 and 12.06 and supported her findings that Ramirez did not meet or medically equal a listing with citations to the evidence of record. While Ramirez is correct that contrary evidence exists, the ALJ considered the subjective testimony, but found it not supported by other evidence in the record. The Court "'may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004)); *see also Jordan v. Comm'r of Soc. Sec. Admin.*, 470 F. App'x 766, 769 (11th Cir. 2012) (refusing to adopt the plaintiff's contention that the ALJ should have discounted the opinions of mental health experts and instead give greater weight to her testimony and that of her mother's). That Ramirez identifies other evidence in the record which may support a different finding (*i.e.*, greater limitations arising from mental impairments) does not mean that the ALJ's decision is unsupported by substantial evidence. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). The Court finds no error in the ALJ's consideration of the Listings.

**D.     Whether the ALJ erred when considering the physicians' opinions**

While unclear, it appears that Ramirez assigns error to the ALJ's decision because the ALJ did not assign certain weight to unnamed physicians' opinions. (Doc. 23, pp. 28-29, 35-36, 52; Doc. 27, p. 3). But the Court rejects Ramirez's point of error because for disability cases filed after March 27, 2017, such as this one, an ALJ does not defer or give any specific evidentiary weight to a medical opinion. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ assesses the persuasiveness of a medical source's opinions in light of the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(b)-(c); 416.920c(b)-(c). In addition to employing the wrong standard, Plaintiff also fails to specify any error by the ALJ as to a particular medical provider and her general comments are not supported by citation to the record. As such, these perfunctory arguments are waived. *See Battle*, 787 F. App'x at 687. Nonetheless, the Court considered the ALJ's discussion of the physicians' records and opinions and finds the ALJ thoroughly evaluated the medical records and opinions when determining their persuasiveness. (*See e.g.*, Tr. 32, 41, 43, 44, 45).

As a result, the Court finds the ALJ properly considered the physicians' opinions.

### E.      Whether the ALJ erred in her assessment of the subjective evidence

Ramirez claims the ALJ almost entirely disregarded the testimony of Ramirez and her mother as to Ramirez's subjective complaints. (Doc. 23, pp. 29, 30-31, 32-33, 54). The Court disagrees.

To show disability based on pain or other symptoms, a claimant must: "show an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged pain [or other symptoms] arising from that condition or (2) that the medical condition is severe enough that it can reasonably be expected to give rise to the alleged pain [or other symptoms]." *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 676 (11th Cir. 2020) (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). "'The standard applies to complaints of subjective conditions other than pain.'" *Hollingsworth v. Comm'r of Soc. Sec.*, No. 20-11678, 2021 WL 406914, *2 (11th Cir. Feb. 5, 2021) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). After a claimant has established a qualifying medical condition, then the ALJ must consider all the evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding whether the claimant is disabled. *Morales*, 799 F. App'x at 676. If the ALJ does not credit the claimant's subjective testimony, she must articulate "explicit and adequate

reasons" for her decision. *Hollingsworth*, 2021 WL 406914, at *2. Here, the ALJ complied with the requirements of SSR 16-3p. (Tr. 29, 33-34 (citing SSR 16-3p, 2016 WL 1119029 (March 16, 2016)).[6]

For DIB, the ALJ summarized Ramirez's testimony concerning her subjective complaints. The ALJ found "Claimant's alleged symptoms and functional limitations are not entirely consistent [ ] from the alleged onset date of disability of July 31, 2015 to the date last insured to December 31, 2015." (Tr. 30). The ALJ then summarized the medical records and noted instances of normal physical examinations, and normal laboratory results. (Tr. 29-31). The ALJ found:

> In view of the conservative limited treatment from the alleged onset date of disability through the date last insured, the apparent improvement of symptoms with medication and the mostly unremarkable clinical signs of record highlighted earlier, the undersigned found that the symptom and limitations alleged by the claimant and her mother prior concerning the Title II application with a remote date last insured of December 31, 2015 are not entirely persuasive, supported or consistent with the medical record. From the alleged onset date through the date last insured, the claimant did not present to the emergency department or an office visit with intractable pain or any uncontrollable symptoms. Her treatment has been very conservative consisting of some prescribed medications.

---

[6] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p explains that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." *Id.* The Commissioner republished SSR 16-3p in October 2017. 82 Fed. Reg., 49,462 (Oct. 25, 2017).

(Tr. 31). The ALJ clearly articulated explicit and adequate reasons for not crediting Ramirez's subjective complaints and supported these reasons with citations to the record.

As to SSI, the ALJ thoroughly summarized the relevant medical evidence, Ramirez's contentions, and her mother's testimony. (Tr. 34-35, 42). The ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 35). The ALJ then summarized the relevant medical records and determined:

> The undersigned considered claimant's complaints of pain. However, the extent of the symptoms and pain alleged are not entirely consistent with the conservative treatment received or the observable clinical signs of record. Furthermore, even though she alleges that she does nothing at home, [she] is the responsible parent of a 13 year old, which requires supervision and care. Her alleged inactivity is inconsistent with the observable clinical signs of record that can be unremarkable (see Ex. 44F at 5; 48F at 3, 12, 20). Even though there is evidence of anger, anxiety attacks and a low intellectual functioning (Ex. 24F at 31 48F at 2, 29), she has been described as cooperative, attentive (Ex. 48F at 34), alert, and oriented (Ex. 44F at 5). The claimant testified that she drives [and] that requires concentration and attention.

(Tr. 41). The ALJ also found inconsistencies in Ramirez's testimony versus objective evidence in the record. For example, Ramirez testified she has a 9th grade education, but in a treatment note she indicated she has a GED. Ramirez also testified

she could not finish a task even as a child and had panic attacks since she was a child, but the ALJ noted that she was able to work at a substantial-gainful-activity level for multiple years. The ALJ reasoned: "Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant is not entirely reliable." (Tr. 41).

The ALJ also summarized Ramirez's mother's testimony and found it not persuasive. The ALJ noted:

> The mother of the claimant is a non-medical source and the extent of the limitations and symptoms she reported are not only internally inconsistent but inconsistent with claimant's own statements and most importantly inconsistent with the observable clinical signs of record. While Mrs. Ramirez reported the claimant could not concentrate or focus, she then reported the claimant plays on her phone all day and night, which includes playing games on her phone, which requires concentration. Ms. Ramirez noted the claimant could not go out alone, drive and she does not shop, but the claimant testified that she drives to the pharmacy and the grocery store. Additionally, Ms. Ramirez alleged spending three times per week with the claimant doing cooking and cleaning for the claimant (Exhibit l 7E/l) and that the claimant experienced 120 panic attacks in the previous six months that can last for several hours and that the claimant began experiencing them at the age of 11 or 12. However, the number of alleged panic attacks do not add up as she then reported that she had witnessed only 20 of them. Ms. Ramirez reported the claimant needed help using the restroom but this is not reflected in treatment notes (Exhibit 21E/2). The extent of the symptoms and limitations claimant's mother alleged are simply not supported or consistent with the medical record.

(Tr. 42). The ALJ again clearly articulated explicit and adequate reasons for not crediting Ramirez's subjective complaints and her mother's testimony and supported these reasons by citation to the record.

The ALJ properly considered all relevant evidence, including Ramirez's subjective complaints and her mother's testimony, and articulated explicit and adequate reasons to discount both. The Court finds no error.

### F.   Whether the ALJ properly considered the combined effects of Ramirez's impairments on her RFC

Ramirez argues generally the ALJ erred by not addressing the entirety of the record and failed to apply the correct legal standards to the opinions and weight of the evidence. (Doc. 23, pp. 27-28; 51-54; Doc. 27, p. 4). In determining a claimant's RFC, the ALJ must consider all the relevant evidence of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). In short, an individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). An ALJ is not required to include limitations in the RFC not supported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). And in the end, a claimant must demonstrate that she cannot adjust to other jobs sufficiently available in the economy, because

ultimately, "the claimant bears the burden of proving that [s]he is disabled." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Here, the ALJ considered the relevant evidence in a thorough and comprehensive manner for both DIB and SSI claims. The ALJ discussed the relevant medical history, other evidence of record, and the hearing testimony, which included Ramirez's subjective complaints and daily activities. (Tr. 28-45). The ALJ repeatedly stated she carefully considered the entire record, including "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" before reaching her decision. (Tr. 24, 29, 33). Generally, an ALJ's statement that she carefully considered the entire record is sufficient to show that she has done so. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 n.3 (11th Cir. 2010) (citing *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)); *see also Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) ("Despite [claimant's] assertions to the contrary, the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits."). Further, the Court is mindful that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision was not a broad rejection that did not enable the court to conclude that the ALJ considered the claimant's medical

23

condition as a whole*." Edgecomb v. Comm'r of Soc. Sec.*, No. 20-11752, 2020 WL 7774948, *2 (11th Cir. Dec. 30, 2020) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Specifically for DIB, the ALJ discussed the treatment notes of Refaat El-Said, M.D. and German Calero, M.D., who reported generally normal physical and psychiatric examinations. The ALJ summarized Ramirez's condition prior to the date last insured and found she received conservative limited treatment from the alleged onset date through the date last insured, had apparent improvement with medication, and had mostly unremarkable clinical findings. The ALJ then considered the opinions of Samuel Hopkins, M.D., Jeaudine Hill, M.D., Theodore Weber, Psy.D., and Jane Cornier, Ph.D. in determining Ramirez's limitations and accommodated Ramirez to a greater degree in the RFC. (Tr. 30-32).

For SSI, the ALJ exhaustively discussed Ramirez's medical records and other evidence of record. The ALJ summarized the many treatments and procedures performed on Ramirez throughout the relevant time period and the outcomes. (Tr. 34-44). The ALJ considered these records and found, overall, Ramirez received medication, injections, and physical therapy for her ailments, which amounted to conservative treatment; had no emergency department visits; and her office visits were without "intractable pain or uncontrollable symptoms." The ALJ also noted

24

that the office visit reports amounted to essentially normal physical examinations. (Tr. 39).

The ALJ found Ramirez limited to understanding and remembering simple instructions, completing simple tasks and work procedures, and frequent but not constant contact with co-workers and the general public. The ALJ considered Ramirez's involuntary commitment after having attempted suicide, but noted Ramirez was discharged the next day after a report of a normal mental status evaluation. The ALJ also considered treatment notes from, among others, Katherine Muir, Ph.D., Concepcion Barreto, M.D., and Hilda Cruz, M.D. The ALJ summarized the treatment records and found that when Ramirez was compliant with her medications, her condition improved. (Tr. 39-40).

As noted previously, the Court rejects Ramirez's broad contention that the ALJ failed to discuss certain medical records or weigh medical opinion evidence. Ramirez failed to specifically identify the records or medical providers, and she failed to cite to the administrative record or legal authority in support of her arguments. (Doc. 23, pp. 27-33, 36). [7] Ramirez attempted to remedy these shortcomings in the Reply (Doc. 27, pp. 3-4). But Ramirez simply lumped her diagnoses together. (Doc. 27, pp. 3-4; n.1). Even so, a diagnosis alone is insufficient,

---

[7] At one point, Ramirez does cite the administrative record, "(Tr. 574-2259)," but this citations is unhelpful. (Doc. 23, p. 52). The Court should not be tasked with reviewing over 1600 pages of the administrative record to find support for Ramirez's contentions.

instead a claimant must show the effect of an impairment on her ability to work. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005). Ramirez has not. Additionally, some of these specifically listed diagnoses or impairments were discussed by the ALJ, for example abdominal pain and cramping, vestibular therapies, vertigo, gait, strength, and pain. (Tr. 28, 30, 31, 34, 35, 36).

While Ramirez argues generally the ALJ failed to address physical and mental diagnostic findings and symptomology, Ramirez simply lumped medical records together without specifically asserting why these particular medical records are relevant to the decision. (Doc. 27, pp. 3-4). Not only that, but the ALJ discussed many of the medical records of the urgent care and emergency visits cited by Ramirez. (Tr. 35-38).

In the Reply, Ramirez does specifically cite the record for one mental health professional, Concepcion Barreto, M.D. in support of her argument that the ALJ did not consider all of the mental health medical records in determining the RFC. (Doc. 27, p. 4). Ramirez claims Dr. Barreto observed on July 7, 2017, that Ramirez had anxiety, restlessness, irritability, trembling, fidgeting, short attention span, and noise sensitivity, all of which she claims interfere with her daily life. (*Id.*, (citing Tr. 802-803)). Dr. Barreto recommended treatment and prescribed medication. (Tr. 803). The ALJ specifically considered Dr. Barreto's reports, including reports showing Ramirez was irritable, talkative with rapid speech, expressed inappropriate anger,

defensive, disheveled but tense, anxious, and presented as manic. (Tr. 36-37, 39, 40). The ALJ also specifically mentioned and considered Dr. Barreto's records of October 19, 2017, showing Ramirez not compliant with her medications, and a later November 3, 2017 medical record documenting Ramirez's behavior as stable and uneventful and her medication compliance was good. (Tr. 40, 1464). Dr. Barreto reported Ramirez had no apparent serious mental status abnormalities, and found Ramirez generally in the normal range. (Tr. 1464-1465). Contrary to Ramirez's contentions, the ALJ did consider Dr. Barreto's opinions and records in formulating the RFC and the Court may not reweigh this evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In sum, the ALJ properly considered all relevant evidence and her decision is supported by substantial evidence. The Court finds no error.

### G.   Whether the vocational expert's testimony constituted substantial evidence

Ramirez also mentions that by disregarding the combined effects of Ramirez's impairments, the ALJ posed an incomplete or incorrect hypothetical to the vocational expert, rendering the vocational expert's opinion not supported by substantial evidence. (Doc. 23, p. 53; Doc. 27, pp. 4-5). At step five of the sequential evaluation, the ALJ must determine whether jobs exist in significant numbers in the national economy that a plaintiff can perform. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). An ALJ may obtain the testimony of a vocational

27

expert to determine whether there are jobs that exist in the national economy that a claimant can perform. *Id*. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013). But an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

Ramirez does not assert the hypothetical to the vocational expert did not include all the limitations in both RFC findings. Ramirez's argument therefore fails because her contentions about the hypothetical question and vocational expert testimony are identical to those leveled at the ALJ's RFC determination, and as discussed above, the Court found the RFCs are supported by substantial evidence. *See Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (finding that the plaintiff's criticism of the hypothetical question was actually an attack on

the RFC determination, which the Court already found was supported by substantial evidence).[8]

## H.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 31, 2021.

_Nicholas P. Mizell_

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

---

[8] The remaining arguments concerning the vocational expert's testimony are perfunctory and are not supported by citation to the record or citation to supporting authority. *See Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019). Thus, they are waived. *Id.*